This is a contempt proceeding.
On May 8, 1985 Joseph C. Hurd was found in contempt of court for failure to restore cash values to insurance policies which had been transferred to his former wife as part of a property settlement in a divorce decree. Hurd seeks review of the contempt citation by way of a writ of certiorari.
The parties to this proceeding were divorced in November 1979. As a part of the property settlement Mr. Hurd was ordered *Page 1195 
in the divorce decree to transfer to his wife four insurance policies issued on his life. After an appeal was taken and while the decree was stayed pending the appeal, Mr. Hurd borrowed the cash value of each of the four insurance policies without the wife's consent or knowledge.
After the divorce decree was affirmed on appeal, the wife sought to have Mr. Hurd held in contempt for failure to restore the cash values of the insurance policies. After a hearing the trial court found Mr. Hurd in contempt. He appealed to this court, where we held that Mr. Hurd had been properly held in contempt for failure to return the cash values of the four insurance policies. We reasoned that Mr. Hurd's action in borrowing the cash values of the four insurance policies effectively diminished the property that had been awarded to the wife in the divorce decree. We concluded that the trial court could invoke its contempt powers to require the restoration of the cash values of the insurance policies, thereby rendering the divorce decree effective. See Hurd v.Hurd, 456 So.2d 316 (Ala.Civ.App. 1984).
As of October 11, 1984 Mr. Hurd had not restored the cash values of the insurance policies, and the trial court was requested to have Mr. Hurd appear and show cause why he should not be held in contempt for such failure. After a hearing Mr. Hurd was held in contempt and remanded to the custody of the sheriff. The arrest order was stayed to permit Mr. Hurd to seek review in this court.
In his first issue Mr. Hurd says that the trial court did not have the power to hold him in contempt for failure to restore the cash values of the four insurance policies as previously required in the divorce decree and the other contempt case. We deem this issue to have been decided by our decision in Hurd v.Hurd, supra.
In his other issue, Mr. Hurd argues that the evidence shows that he was financially unable to restore the cash values of the four insurance policies and thus could not have been held in contempt of court.
The rule is that if it be shown at a contempt hearing that the party cited is unable to comply with the decree of the court due to want of means rather than mere contumacy, then there is no contempt. Thomas v. Thomas, 406 So.2d 939
(Ala.Civ.App. 1981). In other words, the lack of ability to comply is a complete defense to a contempt proceeding for failure to pay. Thomas v. Thomas, supra.
The scope of review in contempt cases is limited to questions of law and does not extend to the weight and sufficiency of the evidence, but only to whether there is any evidence to support the contempt order. Brady v. Brady, 358 So.2d 744
(Ala.Civ.App.), cert. denied, 358 So.2d 748 (Ala. 1978). When the accused shows that he is unable to comply, the burden of proof is then on the petitioner to show beyond a reasonable doubt that the accused can comply. Sewell v. Butler,375 So.2d 800 (Ala.Civ.App. 1979).
In the present case Mr. Hurd has offered proof that he cannot comply with the order to restore the cash values of the insurance policies in question. He said that he received $300 a week expense money from his business, Besco, Inc., of which he is the principal stockholder. He did not receive any salary. Besco, according to Mr. Hurd, lost $20,000 in 1984, and, as of February 1985, had showed a loss of $43,000. Mr. Hurd stated that he had attempted to obtain loans from banks to pay back the cash values but was unsuccessful. He also attempted to obtain a second mortgage on his house, but was unable to do so. His house has been on the market for several months but no sale has been made. Mr. Hurd also said that he had attempted to sell Besco but found no takers.
Mr. Hurd said that he borrowed money on a personal insurance policy and used the proceeds to keep Besco operating. He also testified that he had cancelled several personal life insurance policies due to his inability to pay the premiums.
Mr. Hurd testified that he had no other assets that could be disposed of to restore *Page 1196 
the cash values of the policies. Consequently, he submits that he is without the financial ability to repay the cash values of the policies and, therefore, should not have been held in contempt.
After Mr. Hurd had presented evidence of his financial inability to comply with the court's order, the burden shifted and the wife was then required to present evidence of his ability to comply. Graham v. Graham, 481 So.2d 903
(Ala.Civ.App. 1985). But the wife failed to offer any evidence at trial. On appeal she submits that because Mr. Hurd is able to keep his business operating and is able to make the monthly mortgage payments on his home he is able to comply with the court's order.
At trial Mr. Hurd testified that his present wife was employed by Besco at an annual salary of $30,000. He said that his wife was on the payroll to prevent the former wife from getting any money. Mrs. Hurd contends that this is evidence of his ability to comply.
We note that it was never made clear at trial how much the husband must pay to purge himself. There was some indication that the amount necessary to restore the policies was in excess of $70,000.
At trial Mr. Hurd offered to give his former wife his stock in Besco for release of any further liability in this case. She did not accept this offer. This seems to indicate that she did not consider his company to be worth very much.
The former wife has been trying since 1981 to have Mr. Hurd restore the cash values of the insurance policies awarded to her in the divorce decree and has, to date, been unsuccessful. Although it could be inferred from some of the evidence that Mr. Hurd had willfully failed to restore the policies, nevertheless, the wife did not meet her burden of showing beyond a reasonable doubt that he is financially able to comply with the court's order and that he is able to purge himself of the contempt. Consequently, we must reverse the trial court's judgment of contempt.
This case is reversed and remanded. REVERSED AND REMANDED.
WRIGHT, P.J., concurs.
HOLMES, J., concurs in the result.